FILED

08/23/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0799

DA 15-0799

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 202

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

GERALD JEFFRY KRENNING,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 15-0754
Honorable Michael G. Moses, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Brad L. Arndorfer, Arndorfer Law Firm, P.C., Billings, Montana

      For Appellee:

      Timothy C. Fox, Montana Attorney General, Robert Stutz, Assistant
Attorney General, Helena, Montana

      Scott D. Twito, Yellowstone County Attorney, Billings, Montana

Submitted on Briefs:  June 22, 2016

Decided:  August 23, 2016

Filed:

                    Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1      A Yellowstone County Justice Court jury convicted Gerald Jeffry Krenning of driving under the influence of alcohol (DUI).  Following the Thirteenth Judicial District Court's rejection of his challenges to the conviction, Krenning appeals.  We affirm.

¶2      Krenning raises four issues on appeal:

1.  *Was Krenning denied his right to a speedy trial?*

2.  *Did the Justice Court deny Krenning a fair trial when it refused to allow him to cross-examine Officer Huertas about the reasons for his administrative leave?*

3.   *Did the Justice Court deny Krenning a fair trial when it allowed Officer Huertas to testify as an expert on horizontal gaze nystagmus (HGN)?*

4.  *Did the Justice Court err in refusing Krenning's proposed jury instructions on breath test refusal?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶3      Laurel, Montana, police officer Jim Huertas stopped Krenning on suspicion of DUI on the night of December 23, 2014, after Huertas and another officer independently observed Krenning's vehicle weaving and drifting between lanes on the interstate highway and on Highway 212.  Officer Heurtas noticed that Krenning's eyes were bloodshot and glassy, he smelled of alcohol, and he fumbled when retrieving his driver's license from his wallet.  Officer Huertas administered a roadside HGN test, but Krenning refused a breath test.  The State charged Krenning with DUI and with operating a motor vehicle with expired registration.

¶4      Krenning was arraigned on January 8, 2015.  Initially, the Yellowstone County Justice Court set a pretrial conference date of April 21, 2015, and trial for May 22, 2015.

On the State's motions, the trial was continued until June 26. Then, at the end of a motions hearing and pretrial conference days before trial, the State moved for a three-week continuance on grounds that Officer Huertas was unavailable to testify because he was on paid administrative leave. The court granted that motion and set trial for July 17.

¶5 A week before trial, the defense moved to dismiss the charges against Krenning on the ground that his right to speedy trial had been denied. The Justice Court denied that motion.

¶6 Krenning pleaded guilty to operating a motor vehicle with expired registration and the DUI charge proceeded to trial. Officers Huertas and Jason Wells testified for the State. Krenning testified on his own behalf. The jury found Krenning guilty of DUI.

¶7 Krenning appealed to District Court, which affirmed his conviction.

**STANDARDS OF REVIEW**

¶8 In an appeal from a justice court established as a court of record—as is the Justice Court in this case—the district court functions as an appellate court and the appeal is confined to a review of the record. *See* § 3-11-110, MCA. In reviewing a justice court's findings and conclusions, this Court examines the record independently of the district court's decision. *State v. Marcial*, 2013 MT 242, ¶ 10, 371 Mont. 348, 308 P.3d 69. We discuss additional standards of review in the context of each issue.

3

**DISCUSSION**

¶9      1. *Was Krenning denied his right to a speedy trial?*

¶10     Krenning's trial occurred nine days past the end of the six-month period allowed for trial of a misdemeanor offense under § 46-13-401(2), MCA. The Justice Court denied Krenning's motion to dismiss without stating its reasoning. We review the trial court's legal conclusions on a statutory speedy trial claim to determine whether its interpretation of the law is correct. *City of Helena v. Roan*, 2010 MT 29, ¶ 7, 355 Mont. 172, 226 P.3d 601.

¶11     Krenning relies on *State v. Ronningen*, 213 Mont. 358, 360, 691 P.2d 1348, 1349 (1984), in asserting that the statutory right to trial within six months in a misdemeanor case is absolute. That is not true. As acknowledged in *Ronningen*, 213 Mont. at 360, 691 P.2d at 1349, the statutory six-month limit for trial of a misdemeanor offense does not apply if the trial is postponed on the defendant's motion or if the State demonstrates good cause to continue the trial date. *See also City of Helena v. Heppner*, 2015 MT 15, ¶ 12, 378 Mont. 68, 341 P.3d 640.

¶12     Absent evidence of foot-dragging by the prosecution, the unavailability of a prosecution witness constitutes valid reason for trial delay. In *State v. Johnson*, 2000 MT 180, ¶ 20, 300 Mont. 367, 4 P.3d 654, we characterized the unavailability of an officer on an out-of-state work assignment as "good cause" for the State's requested continuance. *See also State v. Billman*, 2008 MT 326, ¶ 27, 346 Mont. 118, 194 P.3d 58 (noting that the primary officer's unavailability because of training generally would constitute "good

4

cause" for delay, but for the fact that the State did not move for continuance until four days after the scheduled trial date); *State v. Ariegwe*, 2007 MT 204, ¶ 70, 338 Mont. 442, 167 P.3d 915 (citing *Johnson* for principle that unavailability of key prosecution witness is valid reason for delay). Although those cases analyzed the constitutional right to speedy trial, the same conclusion logically attaches to a determination of "good cause" for postponement of trial under § 46-13-401(2), MCA. Officer Huertas's unavailability was not due to any fault of or "foot-dragging" by the State.

¶13 To be sure, a police officer could be subpoenaed to testify notwithstanding the officer's administrative leave or absence for numerous other reasons. But in our constitutional speedy trial discussions we have not imposed an obligation on the State to subpoena an unavailable officer in every instance in order to demonstrate a valid reason for delay. We decline to impose that obligation here, where the delay—nine days—was minimal. The police department's investigation of Huertas for his off-duty conduct was a valid reason for a brief continuance of the trial. Under these circumstances, this short delay does not compel a conclusion that the State had to subpoena Huertas while the internal investigation was pending in order to secure a trial within the six-month deadline. We conclude that the unavailability of the arresting officer was, for purposes of § 46-13-401(2), MCA, good cause for continuing Krenning's trial nine days beyond the six-month deadline.

5

¶14    We conclude that Krenning was not denied a speedy trial.[1]

¶15    *2. Did the Justice Court deny Krenning a fair trial when it refused to allow him to cross-examine Officer Huertas about the reasons for his administrative leave?*

¶16    The Justice Court ruled prior to trial that the defense could not cross-examine Officer Huertas about his administrative leave. We review this evidentiary ruling for an abuse of discretion. *State v. Hicks*, 2013 MT 50, ¶ 14, 369 Mont. 165, 296 P.3d 1149. A trial court abuses its discretion when it "acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." *Hicks*, ¶ 14 (citation omitted).

¶17    A party may offer evidence of a specific instance of the conduct of a witness only if the specific instance of conduct is probative of the witness's truthfulness. *See* M. R. Evid. 608(b). If such evidence is probative, the court nonetheless may exclude the evidence if its prejudicial effect would outweigh the probative value. *State v. Dunning*, 2008 MT 427, ¶ 25, 347 Mont. 443, 198 P.3d 828.

¶18    Krenning provides no facts of record or legal arguments to support his argument that he should have been allowed to cross-examine Huertas on his administrative leave. Instead, Krenning merely attached to his brief a copy of a newspaper article that is not in the record. Krenning has failed to show that the conduct underlying Huertas's administrative leave is probative of Huertas's truthfulness.

---

[1] The District Court analyzed this issue under the constitutional right to speedy trial, and concluded that the right was not violated. However, Krenning did not raise his constitutional right to speedy trial in Justice Court, where the statutory right applied.

6

¶19 We hold that the Justice Court did not abuse its discretion when it refused to allow the defense to cross-examine Officer Huertas about his administrative leave.

¶20 *3. Did the Justice Court deny Krenning a fair trial when it allowed Officer Huertas to testify as an expert on horizontal gaze nystagmus (HGN)?*

¶21 Krenning contends that the State failed to give the defense adequate notice that it would present Officer Huertas as an expert witness on HGN. Without a showing of an abuse of discretion, we will not disturb a trial court's determinations on the presentation of expert testimony. *State v. DuBray*, 2003 MT 255, ¶ 38, 317 Mont. 377, 77 P.3d 247.

¶22 The State argues that it notified Krenning's defense counsel four months prior to trial of its intent to call Huertas as a trial witness and provided counsel a copy of Huertas's police report describing Huertas's administration of the HGN test and its results. Krenning does not deny this.

¶23 Section 46-15-322, MCA, does not obligate the State to designate which of its proposed witnesses are experts; the State is required only to disclose the names of the persons it may call as witnesses. Further, a trial court has great latitude to determine whether a police officer's training is sufficient to allow the officer to testify as an expert on the HGN test. *State v. Harris*, 2008 MT 213, ¶ 10, 344 Mont. 208, 186 P.3d 1263. In this case, the State elicited Huertas's testimony that he had completed basic training at the law enforcement academy for conducting field sobriety tests, as well as advanced training in the Advanced Roadside Impaired Driving Enforcement program, the Drug Recognition Expert (DRE) class, and a forty-hour course for DRE instructors.

¶24 We conclude that Krenning was not denied a fair trial when the Justice Court allowed Officer Huertas to testify as an expert on HGN.

¶25 *4. Did the Justice Court err in refusing Krenning's proposed jury instructions on breath test refusal?*

¶26 Krenning offered three jury instructions regarding an individual's right to refuse to submit to breath testing. His third proposed instruction also stated that refusal does not prove the person was under the influence of alcohol or drugs. The Justice Court rejected the three instructions based on the State's argument that they were inaccurate statements of law.

¶27 The court instructed the jury that a person's refusal to submit to a breath test is admissible as evidence and may be the basis for an inference that the person was under the influence, but that the inference is rebuttable. That instruction accurately reflected the language of § 61-8-404(2), MCA. A trial court has discretion in formulating jury instructions; we will affirm if, as a whole, the instructions fully and fairly set forth the law applicable to the case. *Ammondson v. Northwestern Corp.*, 2009 MT 331, ¶ 30, 353 Mont. 28, 220 P.3d 1.

¶28 The instructions given to Krenning's jury do, as a whole, fully and fairly set forth the law applicable to Krenning's refusal to take a breath test. We hold that the Justice Court did not err in refusing Krenning's proposed instructions.

¶29 Affirmed.

/S/ BETH BAKER

We concur:

/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JIM RICE

Justice James Jeremiah Shea, dissenting.

¶30　Although I agree with the Court's resolution of Issues 2, 3, and 4, I would not reach those issues in this case because Krenning was denied his statutory right to a speedy trial and this case should have been dismissed on those grounds. I therefore dissent as to the Court's resolution of Issue 1.

¶31　The Court concludes "the unavailability of the arresting officer was, for purposes of § 46-13-401(2), MCA, good cause for continuing Krenning's trial." Opinion, ¶ 13. This forms the basis for the Court's holding that "Krenning was not denied a speedy trial." Opinion, ¶ 14. At the outset, therefore, it is necessary to dispense with the fiction that Huertas was, in any real sense, "unavailable" to testify at trial.

¶32　The State contended that Huertas was "unavailable to testify because he was on paid administrative leave." Opinion, ¶ 4. In other words, the State argued, and this Court agrees, that a public employee who is drawing a paycheck, while not working for that paycheck, is "unavailable" to perform one of the required functions of the job for which he is drawing the paycheck. In reality, Huertas was likely the most available law enforcement officer in Yellowstone County during the time of his paid administrative leave because, unlike the officers who were not on paid administrative leave, it was not necessary to call Huertas away from any other law enforcement duties in order to testify.

9

¶33    The State bears the burden to explain pretrial delays. *State v. Ariegwe*, 2007 MT 204, ¶ 64, 338 Mont. 442, 167 P.3d 815.  Whether good cause exists for pretrial delay "will necessarily depend upon the totality of the facts and circumstances of a particular case." *City of Helena v. Roan*, 2010 MT 29, ¶ 13, 355 Mont. 172, 226 P.3d 601.  In this case, the Justice Court denied Krenning's motion to dismiss without stating its reasoning. Opinion, ¶ 10.  Therefore, there was no meaningful analysis of the totality of the facts and circumstances purportedly necessitating the delays and whether the State bore its burden to explain the delays.  Likewise, this Court does not assess the totality of the facts and circumstances of this case in determining whether there was good cause for delay, nor whether the State bore its burden of explaining the pretrial delays.  Instead, the Court simply accepts as an article of faith that "paid administrative leave" equals "unavailability."  Opinion, ¶ 4.  From this assumption, the Court proceeds with its good cause determination.

¶34    In its review of the Justice Court's decision, the District Court did consider the totality of the facts and circumstances of this case and determined—contrary to this Court's assumption—that Huertas was not, in fact, unavailable to testify as the State argued.  Rather, the District Court concluded that Huertas "was forbidden from testifying by his commanding officer."  The District Court then concluded that this was not good cause for delay, because it determined that "an officer's supervisor certainly has no authority to tell a court whether the officer can testify."  The Court does not acknowledge the District Court's conclusions, nor discuss the facts and circumstances that led the District Court to conclude there was not good cause for trial delay because "an officer's

10

supervisor certainly has no authority to tell a court whether the officer can testify." By holding to the contrary on this point, though, the implication is that this Court believes that an officer's supervisor does have the authority to tell a court whether the officer will testify. So to be clear for purposes of future speedy trial analyses, the law in Montana is now: (1) an officer's supervisor has the authority to tell a court whether the officer will be allowed to testify; (2) without any substantive inquiry into the facts and circumstances of the officer's purported unavailability, the State meets its burden of explaining pretrial delay by doing nothing more than stating that the officer has been forbidden from testifying; and (3) the Court will consider this to be good cause for delay.

¶35 The Court acknowledges that Huertas could have been subpoenaed to testify, notwithstanding being on paid administrative leave. Opinion, ¶ 13. This acknowledgement, in itself, belies the notion that Huertas was, in fact, "unavailable" to testify. If Huertas was available to testify by subpoena, then he was available to testify—period. Yet the Court goes on to make the incongruous observation, "we have not imposed an obligation on the State to subpoena an unavailable officer in every instance in order to demonstrate a valid reason for delay." Opinion, ¶ 13. Huertas is an agent of the State. Huertas was available to testify but was forbidden from testifying by another agent of the State because of administrative reasons that had nothing to do with Krenning or his case. The Court is holding, therefore, that it will not impose an obligation on the State to require one of its own agents to testify if another one of its own agents forbids it. So the Court's holding in this case could best be summarized as: It is a valid reason to delay a trial if the State refuses to allow one of its officers to testify.

11

¶36    The Court cites several cases for the proposition that "the unavailability of a prosecution witness constitutes valid reason for trial delay." Opinion, ¶ 12. The distinction between this case and the cases the Court cites is that in those cases there was a determination that the witnesses were, in fact, unavailable after the court considered the totality of the facts and circumstances of each particular case.[1] In this case, there was no such consideration, either by the Justice Court or this Court. The one court that did consider the totality of the facts and circumstances of this case was the District Court, which concluded that Huertas was not unavailable.

¶37    Beyond the faulty factual premise upon which the Court's holding is based, I am equally concerned that the Court reaches its result by incorporating a new element into the statutory speedy trial analysis that is inconsistent with the plain wording of the statute. The Court holds that it will not impose upon the State an obligation to require an officer to testify "where the delay—nine days [beyond the six-month deadline]—was minimal." Opinion, ¶ 13. The Court continues that "this short delay does not compel a conclusion that the State had to subpoena Huertas while the internal investigation was pending in order to secure a trial within the six-month deadline." Opinion, ¶ 13. The Court concludes then that there was "good cause for continuing Krenning's trial nine days beyond the six-month deadline." Opinion, ¶ 13. By focusing on what is otherwise an irrelevant fact, the Court appears to hold that part of the good cause analysis under

---

[1]  It also bears noting that the cases the Court cites are factually distinguishable. In *Johnson*, the State's chief witness was a detective who was out of state interviewing witnesses in a federal case, and in *Billman*, the officer had been called away for military training.

§ 46-13-401(2), MCA, is how far beyond the six month deadline the trial is delayed. This reads something into the statute that is not there.

¶38 Section 46-13-401(2), MCA, provides:

> After the entry of a plea upon a misdemeanor charge, the court, unless good cause to the contrary is shown, shall order the prosecution to be dismissed, with prejudice, if a defendant whose trial has not been postponed upon the defendant's motion is not brought to trial within 6 months.

Montana's statutory speedy-trial protections regarding misdemeanors are more strict than our constitutional analysis. *State v. Case*, 2013 MT 192, ¶ 6, 371 Mont. 58, 305 P.3d 812. When determining whether a statutory speedy trial right has been violated, "the *sole standard* [is] whether 'good cause' for the delay has been shown." *State v. Ronningen*, 213 Mont. 358, 362, 691 P.2d 1348, 1350 (1984) (emphasis added). Although consideration of the length of delay may be a factor in a constitutional speedy trial analysis, *Ariegwe*, ¶ 105, it is irrelevant to a statutory speedy trial analysis. Under § 46-13-401(2), MCA, a delay that lacks good cause on its own merit is not suddenly imbued with good cause because it violates the statute only slightly. The Court's analysis weighing this factor in favor of finding good cause for the delay in this case is both inconsistent with the plain wording of the statute and our precedent applying it.

¶39 A finding of good cause for pretrial delay necessarily depends upon the totality of the facts and circumstances of a particular case. *Roan*, ¶ 13. The facts and circumstances of this particular case are that an agent of the State was available to testify, he was forbidden from testifying by another agent of the State, and the State made no effort to make its agent available to testify within the statutory time period. Krenning's statutory

13

right to a speedy trial was violated and his case should have been dismissed on those grounds. I dissent.

/S/ JAMES JEREMIAH SHEA